729 F.2d 1457
 103 Lab.Cas. P 34,727
 Unpublished Disposition
NOTICE: Fifth Circuit Local Rule 47.5.3 states that unpublished opinions should normally be cited only when they establish the law of the case, are relied upon as a basis for res judicata or collateral estoppel, or involve related facts. If an unpublished opinion is cited, a copy shall be attached to each copy of the brief.
United States, Plaintiff-Appellee
v.
Douglas A. Haskins, Defendant, Peerless Insurance Co.,
Defendant-Appellant.
 No. 83-3384.
 United States Court of Appeals, Fifth Circuit
 March 23, 1984.
 
 Before WISDOM, REAVLEY, and HIGGINBOTHAM, Circuit Judges.
 
 
 1
 HIGGINBOTHAM, C.J.
 
 
 2
 Peerless Insurance Company, surety on several contracts between the United States Postal Service and Douglas Haskins, appeals from a grant of summary judgment finding Peerless liable for underpayments of wages by Haskins to Haskin's employees who were delivering mail under the contracts. We find that the district correctly found Peerless liable and affirm.
 
 
 3
 * In 1975, the Postal Service awarded Haskins several five year mail hauling contracts. Peerless was surety on these contracts. Sometime prior to May 1978, Haskins breached these contracts and Peerless delivered mail under the contracts for six months. In 1979, the Department of Labor instituted administrative proceedings against Haskins for his failure to pay his employees, between 1975 and 1977, the minimum wage as stipulated in the McNamara-O'Hara Service Contract Act of 1965, as amended. 41 USC Sec. 351 et seq. In 1980, an administrative law judge found that the Act was specifically incorporated into Haskins's contracts and that Haskins breached the Act and the contracts. These findings are not contested here. Judgment was entered against Haskins for $9,548.16. Demand for payment was made of Haskins and Peerless, but payment was not forthcoming.
 
 
 4
 The United States then sued Haskins and Peerless to recover for the wages due Haskins's employees under the Act. The district court entered a default judgment against Haskins and summary judgment against Peerless. The district court found that the surety agreement provided that Peerless was liable for any breach of Haskins's contracts. Peerless appeals.
 
 II
 
 5
 On appeal, Peerless' argument is two-fold: (1) that it never obligated itself to pay for damages arising out of Haskins's failure to pay its employees minimum wages; (2) but that if it did, it had relieved itself of this liability by performing mail delivery under the contracts for six months. The contracts, signed by Peerless and Haskins, stated:
 
 
 6
 The obligations under the Surety Bond are as follows:
 
 
 7
 1. The contractor and surety of sureties named herein jointly and severally agree with the U.S. Postal Service to perform service on the route subject to modifications in accordance with the General Provisions of this contract hereto.
 
 
 8
 2. If service on the route is terminated either by action of the contractor or by action of the U.S. Postal Service for breach by the contractor of any of the provisions of this contract, the contractor and surety or sureties named herein are jointly and severally liable to the U.S. Postal Service for the amount of the bond; however, the surety may, in lieu of payment of damages, perform the service for no more than six (6) months from the date service on the route is terminated or the remaining term of the contract, whichever is the lesser time period. The surety may not perform service on the contract beyond that period.
 
 
 9
 If the surety or sureties decline to operate the service the surety or sureties will pay damages incurred by the U.S. Posal Service in reprocuring the service with the maximum damages limited to the face amount of the bond. These damages will be due and payable upon presentation by the U.S. Postal Service to the Surety, of evidence consisting of the differential between the defaulted contract rate and any interim rate paid under an emergency contract and a rate to be paid for service under a reprocurement for the remaining period of the defaulted contract plus any administrative costs incurred to procure emergency service and service for the remaining period of the defaulted contract.
 
 
 10
 ...
 
 
 11
 Contrary to Peerless' claim, it did agree to perform any of Haskins's obligations under the contracts. Specifically, it agreed to be jointly and severally liable with the contractor to "perform service on the route subject to modifications in accordance with the General Provisions of this contract hereto." Under the contract, Haskins was bound to pay its employees who serviced the route the minimum wage. When Haskins failed to do so, Peerless became liable for the underpayments, limited by the face amount of the bond.
 
 
 12
 Peerless also argues that it was relieved of any liability for underpayments because clause two allowed it "in lieu of payment of damages, [to] perform the service for no more than six (6) months ... or the remaining term of the contract, whichever is the lesser time period." A close reading of clause two in its entirety, however, makes it apparent that the clause deals with the underlying specific damages that occur when the contractor's service is terminated for breach of the contract. Once the contractor suspends service or, because he has breached the contract, is told by the Post Office to suspend service, the general obligations of the surety under clause one would make it liable, up to the face amount of the bond, for subsequent costs to service the route for the remainder of the contract period. Clause two allows the surety to limit its exposure for damages incurred after the contractor's termination by servicing the route for six months. Clause two also states that if the surety declines to take over the route he will be responsible for "damages" incurred in finding and paying an alternative carrier over the entire remaining period of the original contract. These are the "damages" that may be avoided ("in lieu of") by the surety servicing the route itself.
 
 
 13
 The "in lieu of" language in clause two cannot be interpreted to relieve the surety of liability for previous underpayments by the contractor because clause two itself specifies what damages a surety must pay if it does not perform after the contract is terminated. These damages relate solely to post-termination expenses. Otherwise stated, clause one cannot be narrowly construed to exclude damages for violations of the general provisions of the contract because it would then be rendered largely superfluous by clause two.
 
 
 14
 As noted by the district court, the limit of total damags or costs expended by the surety is still the face amount of the bond. No appeal has been made that Peerless is being forced to pay more than this amount. The judgment of the district court is Affirmed.